UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| BRANDON AKRAWI,<br><br>Plaintiff,<br><br>v.<br><br>FCA US LLC, *et al.*,<br><br>Defendants. | Case No. 25-cv-13229<br>Honorable F. Kay Behm<br>Magistrate Judge Elizabeth A. Stafford |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND DENYING DEFENDANT FCA'S MOTION TO STRIKE
(ECF NOS. 85, 88)**

## I.     Introduction

Plaintiff Brandon Akrawi, proceeding pro se and in forma pauperis, brings this employment action against Defendants FCA US LLC (doing business as Stellantis US LLC) and two labor unions.  ECF No. 1; ECF No. 31.  The Honorable F. Kay Behm referred the case to the undersigned for all pretrial proceedings under 28 U.S.C. § 636(b)(1).  ECF No. 12.

In January 2026, the Court issued a report and recommendation (R&R) to deny Akrawi's motion for leave to amend and dismiss the action.  ECF No. 82.  Akrawi now moves a second time to amend his complaint.

ECF No. 85.  FCA moves to strike Akrawi's motion to amend.  ECF No. 88. The Court **GRANTS IN PART AND DENIES IN PART** Akrawi's motion to amend and **DENIES** FCA's motion to strike.

## II.    Background

The new proposed amended complaint (PAC) alleges that Akrawi began working for FCA in May 2012 but developed permanent physical limitations after he had a serious accident requiring multiple surgeries. ECF No. 85-1, PageID.2389.  Akrawi's doctor stated that he required a sit/stand option and could not stand for more than 30 minutes at a time.  *Id.* From April 2016 through January 2024, FCA accommodated this restriction by assigning Akrawi to sit-down hi-lo forklift positions in Department 3321 (the material logistics management or "MLM" department).  *Id.*  In 2023, Akrawi announced his candidacy to be elected as union committeeperson. *Id.*, PageID.2390.  Soon after, Akrawi allegedly began experiencing hostility, heightened scrutiny, and adverse actions.  *Id.*

In January 2024, FCA allegedly began to require employees in the MLM department to operate both a hi-lo and a stand-up tugger.  *Id.*, PageID.2391.  Akrawi was disqualified from his position in the MLM department because of the new requirement that he operate both vehicles and was transferred in February 2024 to Department 9151 (the trim

2

department).  *Id.*, PageID.2392.  Although Akrawi requested accommodation to remain in the MLM department in a sit-down hi-lo position, FCA allegedly rejected this request without engaging in an interactive process.  *Id.*  Akrawi then went on stress leave in April 2024.  *Id.*, PageID.2395.

Akrawi asked the unions to grieve his removal from the MLM department, but union representatives allegedly denied that request.  *Id.*  Confusingly, Akrawi later alleges that the union did pursue a grievance that "proceeded through multiple steps" and that he was ultimately reinstated to the MLM department without back pay in July 2025.  *Id.*, PageID.2395-2396.

When Akrawi returned to the MLM department, he was assigned not to a hi-lo but to a stand-up tugger despite his lack of licensing to operate that vehicle.  *Id.*, PageID.2396.  Akrawi's doctor provided him a certificate restricting him from standing more than 30 minutes per hour or pulling more than ten pounds.  *Id.*, PageID.2396-2397.  When processing the certificate, FCA allegedly altered the restriction code to require no standing work rather than a sit/stand option.  *Id.*, PageID.2397.  Based on the incorrect restriction code, FCA allegedly informed Akrawi there was no work available for him.  *Id.*, PageID.2398.  Thus, Akrawi was placed on sickness

and accident ("S&A") leave in August 2025 and received benefits that were lower than what he would have earned if he were working.  *Id.*

On the same day, FCA advertised open hi-lo positions in the MLM department that would have been compatible with Akrawi's sit/stand restriction.  *Id.*, PageID.2399.  According to a September 2015 agreement between FCA and the union, employees with "physically qualified restrictions" were to receive priority appointment to open jobs.  *Id.*, PageID.2390, 2400.  Yet FCA allegedly awarded the positions to junior employees who did not have physical restrictions.  *Id.*, PageID.2400.  Akrawi claims that the unions failed to challenge this employment action or enforce the September 2015 agreement.  *Id.*, PageID.2400-2401.

Akrawi asserts claims against FCA under the Americans with Disabilities Act (ADA) for (1) discrimination, (2) failure to accommodate, (3) failure to engage in an interactive process, and (4) retaliation.  *Id.*, PageID.2403-2408.  Akrawi asserts that the unions breached the duty of fair representation, in violation of the Labor Management Relations Act (LMRA).  *Id.*, PageID.2387, 2408-2410.

4

## III.   Analysis

### A.

Rule 15(a)(2) states that leave to amend should be freely given "when justice so requires."  But a motion to amend "should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile."  *Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010) (cleaned up).  "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."  *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

A motion to dismiss under Rule 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."  *League*

5

*of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

In deciding whether a plaintiff has set forth a plausible claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Iqbal*, 556 U.S. at 678. But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.*, and the Court has no duty to create a claim not spelled out in the pleadings, *Freightliner of Knoxville, Inc. v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 871 n.4 (6th Cir. 2007). Pleadings filed by pro se litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers, but such complaints still must plead a plausible claim for relief. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012); *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).

## B.

After filing the original complaint, Akrawi amended his complaint as a matter of course under Rule 15(a). ECF No. 31. He filed a second amended complaint without moving for leave, and the Court struck it as an unauthorized filing. ECF No. 68; ECF No. 74. Akrawi then moved for leave to amend. ECF No. 75. The Court recommended denying the motion and

6

dismissing the case.  ECF No. 82.  The January 2026 R&R and Akrawi's objections remain pending before Judge Behm.  Akrawi now moves a second time for leave to amend his complaint.  ECF No. 85.  FCA moves to strike Akrawi's motion, arguing that it is procedurally improper because his last motion to amend remains pending.  ECF No. 88.  The unions echo the same argument in their response to Akrawi's motion to amend.  ECF No. 86.

Defendants cite no authority—nor is the Court aware of any—that a plaintiff may not move to amend a complaint after a magistrate judge has recommended denying a previous motion to amend on futility grounds.  True, a plaintiff's "repeated failure to cure deficiencies by previous amendments" is relevant to whether he should be granted leave to amend.  *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458 (6th Cir. 2001) (cleaned up).  "Courts are especially inclined to deny a motion brought under Rule 15 if the moving party knew the facts on which the claim or defense sought to be added were based at the time the original pleading was filed and there is no excuse for his failure to plead them."  *Springs v. Mayer Brown LLP*, No. 11-13518, 2013 WL 656465, at *2 (E.D. Mich. Jan. 31, 2013)

(cleaned up); *see also McCray v. Carter*, 571 F. App'x 392, 399-400 (6th Cir. 2014).

But "[d]elay by itself is not sufficient reason to deny a motion to amend." *Wade*, 259 F.3d at 459.  Plaintiffs are often afforded three opportunities to amend before courts deny further amendment based on a failure to cure deficiencies.  *Doe v. City of Pharr, Tex.*, 652 F. App'x 259, 265 (5th Cir. 2016); *Dyson v. N.Y. Health Care, Inc.*, 353 F. App'x 502, 503-04 (2d Cir. 2009).  The litigation is at an early stage, and discovery has not yet begun.  Beyond having to respond to multiple motions to amend, defendants have identified no concrete prejudice if Akrawi is permitted to amend his complaint at this stage.  Thus, the Court declines to strike or deny Akrawi's motion to amend because of delay or his repeated failures to correct pleading deficiencies and will instead address the new proposed amended complaint on the merits.  But because Akrawi's newest PAC is his third attempt to amend his pleadings, he is warned that he will face a heavy burden if he moves again to amend his complaint.

## C.

Count I asserts an ADA discrimination claim against FCA.  ECF No. 85-1, PageID.2403-2405.  In its January 2026 R&R, the Court discussed the pleading requirements for this claim and determined that Akrawi failed

to allege that he suffered an adverse employment action.[1] ECF No. 82, PageID.2324-2326.

An adverse action requires "*some* injury respecting [the plaintiff's] employment terms or conditions," such that he was left "worse off." *Muldrow v. City of St. Louis*, 601 U.S. 346, 359 (2024) (emphasis added). A plaintiff must allege that the employment action was harmful, for example, because it resulted in lower pay, fewer job benefits, or less desirable work. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 607-08 (6th Cir. 2019) ("We also consider whether an action resulted in a plaintiff receiving 'a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation,' along with other markers of prestige and desirability."); *Ahmed v. Sch. Dist. of City of Hamtramck*, No. 2:22-cv-11127, 2024 WL 4234641, at *8-9 (E.D. Mich. Aug. 26, 2024).

Akrawi now alleges two adverse actions: (1) his transfer to the trim department in February 2024 and (2) his placement on S&A status in August 2025 despite there being open hi-lo positions in the MLM department. ECF No. 85-1, PageID.2404. Akrawi alleges that there was

---

[1] For each claim, the Court relies on the pleading standards discussed in the January 2026 R&R and does not repeat them in full here.

little work available in the trim department, so he was forced to sit idle during much of his shift.  *Id.*, PageID.2393-2394.  His transfer to the trim department also resulted in fewer work hours and no overtime opportunities, meaning reduced hourly pay.  *Id.*, PageID.2394.  Akrawi claims that he was forced to sit on hard benches with no back support, which aggravated his medical conditions.  *Id.*  And had he remained in the MLM department, Akrawi allegedly would have been eligible for a third shift pay increase.  *Id.*

On S&A status, Akrawi received benefits of $766 per week, a lower rate than his regular pay.  *Id.*, PageID.2398.  And because Akrawi was removed from active payroll while on S&A status, he was no longer eligible for certain benefits, including FCA's stock purchase program, profit sharing, vacation and sick leave accrual, attendance bonuses, performance bonuses, and seniority accrual.  *Id.*

Akrawi plausibly alleges that both employment actions resulted in harm through reduced pay and benefits, along with undesirable work duties and conditions.  Thus, Akrawi has stated a viable ADA discrimination claim against FCA.

**D.**

Counts II and III assert ADA claims against FCA for failure to accommodate and failure to engage in an interactive process.  ECF No. 85-1, PageID.2405-2407.  The Court found in the January 2026 R&R that Akrawi failed to state plausible claims because he did not allege details about his request for accommodation.  ECF No. 82, PageID.2326-2329.

Akrawi now alleges that he went to FCA's medical department on February 1, 2024, and requested reinstatement of his sit/stand restriction and reassignment to a sit-down hi-lo position.  ECF No. 85-1, PageID.2391.  FCA allegedly disqualified him from the MLM department and transferred him to the trim department the next day.  *Id.*, PageID.2392.  On February 5, 2024, Akrawi allegedly submitted to FCA's medical and human resources departments another accommodation request from his treating physician that he return to a hi-lo position in the MLM department.  *Id.*, PageID.2392.  But FCA allegedly rejected the accommodation request without discussing available accommodation options or asking about Akrawi's limitations.  *Id.*

Akrawi also claims that he requested accommodation after he returned to the MLM department in July 2025 and was assigned to driving a stand-up tugger.  ECF No. 85-1, PageID.2395-2397, 2406.  He alleges that he gave FCA's medical department a certificate from his treating physician

11

stating that he could not stand more than 30 minutes per hour and could not pull more than ten pounds. *Id.*, PageID.2396.  Akrawi was told to go home and return with a diagnosis from his physician so he could be placed on a job. *Id.*, PageID.2396-2397.  He did so, and FCA allegedly incorrectly applied a restriction for non-standing work and placed Akrawi on S&A leave because no open positions matched that restriction. *Id.*, PageID.2397.

Taking these pleadings as true, Akrawi has adequately alleged that he requested accommodation in February 2024 to hi-lo work and in July 2025 to work involving only 30 minutes of standing per hour.  Presenting an employer with a doctor's note requiring work restrictions qualifies as an accommodation request. *See Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 351 (6th Cir. 2015).

Once an employee requests accommodation, the ADA requires an employer to engage in a communicative and good faith "interactive process" and "individualized inquiry," the purpose of which "is to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 929 (6th Cir. 2013).  "Examples of how a party may fail to engage in the process in good faith include causing unnecessary delays or obstructing the process, as well as failing to adequately

12

communicate or provide information during the process." *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 840 (6th Cir. 2018).

Akrawi plausibly alleges that FCA failed to engage in an interactive process. In February 2024, FCA allegedly did not discuss with Akrawi what accommodation options would align with his physical restrictions. ECF No. 85-1, PageID.2392. Initially, FCA allegedly proposed to disqualify Akrawi from the MLM department because of a twisting and pulling restriction. *Id.*, PageID.2393. When an FCA doctor disagreed with that rationale, FCA pivoted to Akrawi's inability to operate both a hi-lo and stand-up tugger as justification. *Id.* The doctor allegedly told Akrawi that FCA was "very adamant" about removing him from the MLM department and that she "felt like the company had [her] in the middle of something." *Id.*, PageID.2392-2393. FCA again allegedly offered "shifting justifications" for Akrawi's transfer to the trim department during the grievance process, alternately relying on the pulling/twisting restrictions, the dual equipment requirement, and certain policies. *Id.*, PageID.2401-2402.

In July 2025, FCA allegedly did not discuss Akrawi's physical restrictions with him. *Id.*, PageID.2397. When processing a doctor's statement that Akrawi could not stand more than 30 minutes per hour, FCA applied a restriction code for non-standing work—even though it had

13

applied a code for sit/stand work when previously given a doctor's statement with the same restriction.  *Id.*, PageID.2389, 2397.  This alleged coding error resulted in FCA's determination that no work was available.  *Id.*, PageID.2398.

This alleged conduct supports an inference that FCA failed to adequately communicate about Akrawi's physical restrictions.  Akrawi plausibly states ADA claims against FCA for failure to accommodate and failure to engage in an interactive process.

**E.**

Count IV advances an ADA retaliation claim against FCA.  ECF No. 85-1, PageID.2228-2229.  The Court previously found that the claim should be dismissed because Akrawi did not plausibly allege an adverse action.  ECF No. 82, PageID.2329.

Akrawi alleges several instances of protected activity.  He claims that he opposed various FCA practices in his role as union committeeperson, including issues about overtime compensation, temporary work assignments, and grievances for lost wages.  ECF No. 85-1, PageID.2390-2391, 2407.  And after he was transferred to the trim department, Akrawi allegedly (1) reported "retaliation and harassment" to FCA's integrity hotline, (2) filed charges against FCA with the National Labor Relations

Board (NLRB), and (3) filed a complaint about workplace safety with the Michigan Occupational Safety and Health Administration (MIOSHA).  *Id.*, PageID.2395, 2407.

The ADA prohibits "any person from retaliating against an individual who has opposed any act or practice *made unlawful by the ADA*."  *Mich. Flyer, LLC v. Wayne Cnty. Airport Auth.*, 138 F. Supp. 3d 899, 900 (E.D. Mich. 2015) (cleaned up, emphasis added).  Thus, a plaintiff "must plead facts showing that…[he] engaged in activity protected by the ADA."  *Id.* at 902.  Protesting employment practices unrelated to disability discrimination is not activity protected by the ADA.  *See Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) ("The ADA is not…a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in, or aiding another who engages in, activity covered by the ADA.").

Akrawi's opposition to FCA practices in his role as union committeeperson and his MIOSHA complaint did not concern disability discrimination and cannot serve as protected activities underlying his retaliation claim.  As for the complaints to the integrity hotline and the NLRB, Akrawi does not provide adequate detail showing that those

complaints concerned disability discrimination.  Thus, a retaliation claim stemming from this alleged activity is futile.

Akrawi plausibly alleges that he engaged in protected activity when he requested accommodation in February 2024 and July 2025.  Requesting accommodation is protected activity.  *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013).  Akrawi alleges that FCA knew about this protected activity and retaliated by transferring him to the trim department and placing him on S&A status.  ECF No. 85-1, PageID.2407-2408.  As discussed above, Akrawi has adequately alleged that those employment actions were "materially adverse."  *See A.C.*, 711 F.3d at 698.

To state a retaliation claim, Akrawi must allege that "the adverse action was caused or motivated by the protected activity."  *Mich. Flyer*, 138 F. Supp. 3d at 902.  Akrawi says that he requested accommodation on February 1, 2024, and that he was transferred to the trim department the next day.  ECF No. 85-1, PageID.2391-2392.  And on July 30, 2025, Akrawi requested accommodation aligning with his doctor's restrictions but was placed on S&A leave on August 4, 2025.  *Id.*, PageID.2396-2398.  The close temporal proximity between the alleged protected activities and adverse actions adequately shows causation.  *See Moody v. MidMichigan Med. Ctr. Midland*, 704 F. Supp. 3d 772, 783 (E.D. Mich. 2023) (citing

16

cases in which "the Sixth Circuit has found temporal proximity alone is enough to establish causation").

Thus, Akrawi has stated plausible claims that FCA retaliated against him for requesting accommodation.

**F.**

Count V alleges that the unions breached the duty of fair representation in violation of the LMRA.  ECF No. 85-1, PageID.2408-2410. The Court previously found that Akrawi's allegations did not state a plausible LMRA claim against the unions.  ECF No. 82, PageID.2330-2334.

"A union breaches its statutory duty of fair representation only when its conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  *Summers v. Keebler Co.*, 133 F. App'x 249, 253 (6th Cir. 2005) (quoting *Vaca v. Sipes*, 386 U.S. 171, 190 (1967)) (cleaned up).  A union's actions are arbitrary if its "behavior is so far outside a wide range of reasonableness as to be irrational" when viewed against the "factual and legal landscape."  *Id.* (cleaned up).  Bad faith is shown if the union acted with improper intent or motive.  *Bowerman v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Local No. 12*, 646 F.3d 360, 368 (6th Cir. 2011).  But a union does not breach the duty of

fair representation just because it erred in judgment or acted negligently. *Id.*; *Summers*, 133 F. App'x at 253.

With respect to his placement on S&A status in August 2025, Akrawi claims that the union arbitrarily failed to challenge that outcome or enforce the September 2015 agreement securing his right to priority job placement based on his disability.  ECF No. 85-1, PageID.2409.  It is unclear from the allegations how Akrawi addressed his placement on S&A leave with the unions.  He claims that a union steward investigated and found that Akrawi should not have been removed.  *Id.*, PageID.2400.  Although Akrawi alleges that the unions took no action to enforce the September 2015 agreement or process a grievance, he also states that a union committeeman "moved [a grievance] to the 3rd step."  *Id.*

"[A] union must conduct some minimal investigation of grievances brought to its attention."  *Armstrong v. Chrysler Corp.*, 972 F. Supp. 1085, 1089 (E.D. Mich. 1997) (cleaned up).  "[B]ut the thoroughness of this investigation depends on the particular case."  *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 917 (7th Cir. 2013).  As with his last proposed complaint, Akrawi's allegations lack the factual detail necessary to determine whether the unions' handling of his placement on S&A status was arbitrary.  Akrawi does not describe how he raised the issue with the unions; whether or

18

when a grievance was filed; or the substance of any grievance.  Beyond his vague references to an investigation and moving a grievance to the third step, Akrawi does not allege what steps the unions took in handling the matter or why those steps were inadequate.  Without these factual details, Akrawi's allegations that the unions acted arbitrarily are conclusory.  *See id.* at 916-17 (dismissing claim for breach of fair representation based on similarly skeletal allegations).

As for his February 2024 transfer to the trim department, Akrawi alleges that the unions acted arbitrarily by failing to challenge FCA's shifting justifications and by failing to present certain evidence.  ECF No. 85-1, PageID.2401-2402, 2409.  But Akrawi also alleges that the unions pursued a grievance about his transfer to the trim department from February 2024 through July 2025.  *Id.*, PageID.2395-2396.  Again, without more context about the unions' handling of the grievance, Akrawi has not plausibly alleged that its decision not to pursue certain arguments was arbitrary.  And the unions' alleged failure to advance Akrawi's preferred arguments or evidence amount to a tactical error in judgment and would not support a claim that the unions breached the duty of fair representation. *See Barr v. United Parcel Serv.*, 868 F.2d 36, 43-44 (2d Cir. 1989) ("Tactical errors are insufficient to show a breach of the duty of fair

19

representation; even negligence on the union's part does not give rise to a breach."); *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 161 F. Supp. 3d 187, 194 (S.D.N.Y. 2016) ("[C]omplaints regarding inadequate cross-examination, failing to raise certain objections or introduce evidence or arguments are all allegations that fail to state a claim of breach of fair representation."); *Elliott v. U.S. Postal Serv.*, 621 F. Supp. 1093, 1097 (E.D. Mich. 1985) ("[E]ven assuming that Compton did not advance every argument at the arbitration hearing that Plaintiff requested, an assumption that is unwarranted by the facts of the case as discussed above, such negligent misrepresentation constitutes at most an error in judgment and does not amount to the reckless disregard required to establish arbitrariness.").

Akrawi also alleges that the unions acted in bad faith by deterring him from appealing the outcome of the grievance about his transfer to the trim department.  ECF No. 85-1, PageID.2409.  When the unions informed Akrawi in March 2025 that he would be reinstated to the MLM department, they allegedly discouraged him from appealing the lack of back pay.  *Id.*, PageID.2395-2396.  The unions allegedly "threatened" Akrawi that the impartial chairman would withdraw his favorable decision if Akrawi

appealed and that Akrawi would be sent back to the trim department while the public review board handled the case.  *Id.*

These vague allegations do not show that the unions prevented Akrawi from appealing the back pay issue.  As far as the Court can discern, the unions informed Akrawi what would happen if he appealed the impartial chairman's decision.  By simply advising Akrawi that he would be sent back to the trim department if he chose to appeal, the unions did not prevent him from exercising his free will to choose between the two alternatives.  *See Nikci v. Quality Bldg. Servs.*, 995 F. Supp. 2d 240, 249 (S.D.N.Y. Jan. 27, 2014) (by advising the plaintiff that his employer would terminate him if he did not sign a settlement agreement, the union did not breach the duty of fair representation by coercing him into signing the agreement).

Last, Akrawi alleges that he filed misconduct charges in July 2025 against union representatives who mishandled his grievance.  ECF No. 85-1, PageID.2402.  The misconduct alleged concerned the unions' failure to challenge FCA's shifting justifications for transferring Akrawi to the trim department.  *Id.*, PageID.2401-2402.  The unions allegedly misclassified the misconduct charges as a grievance appeal, and the international executive board denied the charges as untimely in August 2025.  *Id.*, PageID.2402.  Akrawi alleges that the unions acted arbitrarily and in bad

21

faith by misclassifying his misconduct charges as an appeal to prevent investigation.  *Id.*, PageID.2409.

These are also vague and conclusory allegations that do not show how the unions acted arbitrarily or in bad faith.  While the unions allegedly misclassified the misconduct charges as a grievance appeal to prevent investigation, Akrawi admits that the international executive board considered the charges and denied them as untimely.  *Id.*, PageID.2402. Although Akrawi disagrees with this decision, he has not alleged facts showing that it was either irrational or made with improper intent.[2]  *See Smith v. Highland Park Fed'n of Teachers*, 833 F.2d 1013 (Table) (6th Cir. 1987) ("At most, plaintiff has demonstrated that a difference of opinion existed between himself and the union, which is insufficient to create an issue of fact as to the union's duty of fair representation.").

---

[2] Akrawi alleges that the unions' pattern or practice of arbitrary and bad-faith conduct was established in a lawsuit against Local 140 for tampering with an election of union officers, *U.S. Dep't of Labor v. United Auto., Aerospace & Agric. Implement Workers of Am., Local 140*, No. 24-13140. ECF No. 85-1, PageID.2402-2403.  Akrawi claims that Local 140 admitted in a settlement agreement that it failed to fairly represent employees because it refused to process grievances.  *Id.*  Not so.  The joint stipulation of settlement and consent decree in that case state that Local 140 "denies the violations alleged in this action."  *U.S. Dep't of Labor*, No. 24-13140, ECF No. 11, PageID.48 (E.D. Mich. May 19, 2025) and ECF No. 12, PageID.52 (E.D. Mich. May 27, 2025).

Akrawi's LMRA claims against the unions are thus futile, and the unions should be dismissed from the action as recommended in the January 2026 R&R.

## IV.    Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Akrawi's motion to amend (ECF No. 85) and **DENIES** FCA's motion to strike (ECF No. 88).  The Court construes Akrawi's amended complaint as the operative complaint, excluding the claims found above to be futile (ECF No. 85-1).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: March 6, 2026

## NOTICE TO PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this order, any party may file objections with the assigned district judge.  Fed. R. Civ. P. 72(a).  The district judge may sustain an objection only if the order is clearly erroneous or contrary to law.  28 U.S.C. § 636.  **"When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling**

23

**remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge."**  E.D. Mich. LR 72.2.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 6, 2026.

S/Caitlin Shrum
CAITLIN SHRUM

Case Manager

24